UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID HOJNOWSKI,

                      Plaintiff,

v.                                     **DECISION AND ORDER**
                                                        13-CV-388S

BUFFALO BILLS, INC.,

                      Defendant.

## I. INTRODUCTION

David Hojnowski, a former equipment manager for the Buffalo Bills, brings this action against his former employer alleging that it violated his rights under the Age Discrimination in Employment Act, the New York State Human Rights Law, and the Employee Retirement Income Security Act. The Bills now move to dismiss each claim and compel Hojnowksi to pursue this dispute in arbitration. For the following reasons, that motion is granted.

## II. BACKGROUND

### A. Factual history

The full factual history of Hojnowski's employment with the Bills and his allegations against them are not relevant to the motion currently before this Court. It suffices to note that Hojnowski began working for the Bills in 1975 in "equipment operations." Over the course of the next 37 years, Hojnowski remained employed by the Bills, executing successive one- or two-year contracts with the football team. His most recent employment contract was executed on February 15, 2011. It covered a two-year term beginning on March 1, 2011 and ending on February 28, 2013. (Overdorf Aff., ¶ 6; Agreement attached as Ex. A; Docket No. 6-1.) On September 5, 2012, then-Bill's General Manger, Buddy Nix, terminated his employment. The Bills, however, paid his full salary through February 28,

2013. (Id., ¶ 7.)

Section 12 of the employment agreement that Hojnowski and James Overdorf, the Senior Vice President of Football Administration, executed on February 15, 2011 contains an arbitration clause. It provides:

> Employee agrees that all matters in dispute between Employee and Employer, including without limitation any dispute arising from the terms of this Agreement, shall be referred to the NFL Commissioner for binding arbitration, and his decision shall be accepted as final, complete, conclusive, binding and unappealable by the Employee and Employer.

(Id., ¶ 10.)

The National Football League has also issued procedural guidelines to govern arbitration proceedings. (Id., ¶ 11; Guidelines attached as Ex. B.) No copy of those rules, however, was provided to Hojnowski or attached to the employment agreement.

## B. Procedural history

Hojnowski initiated this action by filing a complaint in this Court on April 18, 2013. Soon thereafter, on May 13, 2013, Defendant moved to dismiss the complaint. Briefing on that motion concluded on January 28, 2014, when this Court permitted Hojnowski to file additional authority in support of its opposition to the Bills' motion.

### III.  DISCUSSION

## A.    Legal standards

The Federal Arbitration Act ("FAA"), which is an expression of "a strong federal policy favoring arbitration as an alternative means of dispute resolution," applies to the Defendant's motion to compel arbitration. Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001). "In the context of motions to compel arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe–Riat, 316 F.3d 171,

175 (2d Cir. 2003). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Id. (citing 9 U.S.C. § 4). "Whether a dispute is arbitrable comprises two questions: '(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement.'" Hartford , 246 F.3d at 226 (quoting National Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135 (2d Cir.1996)). "While the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 681, 130 S. Ct. 1758, 1773, 176 L. Ed. 2d 605 (2010) (internal citations and quotation marks omitted); Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012) (existence of agreement to arbitrate is question of state law). Finally, a party may not be compelled under the FAA to submit to arbitration "unless there is a contractual basis for concluding that the party agreed to do so." Stolt–Nielsen S.A., 130 S. Ct at 1775; Ross v. American Exp. Co., 547 F.3d 137, 143 (2d Cir. 2008).

**B.    Whether the parties agreed to arbitrate**

Courts in this circuit consider three factors when deciding whether to compel arbitration: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; and (3) whether Congress intended the plaintiff's statutory claims to be nonarbitrable. See Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75–76 (2d Cir.1998). Then, if not all claims are arbitrable, the court must determine whether to stay the balance of the proceedings pending arbitration. Id.

Hojnowski does not take issue with the final two factors; rather, he contends that none of his claims is subject to arbitration. To be clear, Hojnowski does not dispute that he

executed an agreement requiring him to submit any dispute arising out of his employment to arbitration. Instead, he contends that because the rules governing arbitration were not included in, or even explicitly referenced by the employment agreement, no enforceable arbitration agreement exists.

Under New York law, which both parties agree applies to this question, "the fundamental basis of a valid enforceable contract is a meeting of the minds of the parties. If there is no meeting of the minds on all essential terms, there is no contract. This is because an enforceable contract requires mutual assent to essential terms and conditions thereof." Schurr v. Austin Galleries of Ill., 719 F.2d 571, 576 (2d Cir.1983) (internal citations and quotation marks omitted).

As an initial matter, although Hojnowski argues that "the importance of the procedural guidelines cannot be overstated," (Pl.'s Br. at 7; Docket No. 11-2), he fails to point to any authority suggesting that the rules and procedures governing arbitration are essential terms. At least one court has suggested the opposite: "In the orthodox situation the content of arbitration rules would not constitute a material term of the agreement because such rules would address merely procedural matters of the forum." Hooters of Am., Inc. v. Phillips, 39 F. Supp. 2d 582, 606-07 (D.S.C. 1998) (applying South Carolina law, which contains the universal concept that a contract must reflect a "meeting of the minds").

Instead, Hojnowski argues by analogy. To support his argument that essential terms – i.e., the rules governing arbitration – were missing and that their absence precludes mutual assent, Hojnowski relies on a single Summary Order from the Second Circuit with no precedential value. See 2d Cir. L. R. 32.1.1(a) ("Rulings by summary order do not have precedential effect."). In that case, Dreyfuss v. Etelecare Global Solutions-U.S. Inc., the Court of Appeals held that "it is [] not correct that because the record indicates that both

[the plaintiff] and [the defendant] have expressed an intention to arbitrate, 'the mere fact that provisions setting forth specific arbitration procedures are now missing does not render the parties' agreement to arbitrate unenforceable.'" 349 F. App'x 551, 555 (2d Cir. 2009).

Although this holding appears to have some relevance here, that case addressed a problem distinct from the one presented in this case: the party seeking to compel arbitration could not produce the full employment agreement. As the court noted:

> A problem immediately became apparent in that the copy of the agreement submitted by [Defendant] to the district court in support of its motion is obviously not a copy of the original agreement. The last page is signed by [Plaintiff], but the text on the preceding page stops in the middle of a sentence which is not completed on the last page. And, although [Plaintiff] does not dispute that he signed an arbitration agreement upon being employed by [Defendant], [Defendant] acknowledges that it could not locate a complete copy of the arbitration agreement which [Plaintiff] signed.

It concluded that the defendant's "suggestion that the Court simply enforce the two-page fragment as though it were the full document runs afoul of basic contract principles." Id. at 554.

Hojnowski seeks to analogize that case to this one, suggesting that the missing pages of the agreement in Dreyfuss mirror the missing arbitration rules here.

But that analogy must fail. First, there is no dispute that the complete agreement has been produced and provided to this Court. Second, there is no dispute that Hojnowski was aware that he would be required to arbitrate any employment-related dispute before the NFL Commissioner and – though he may not have been aware of it – there is no dispute that the Commissioner had in fact issued detailed procedural guidelines to govern arbitrations. (See Ex. B of Overdorf Aff.) In this sense, the present situation does not resemble Dreyfus; it more closely resembles Tarulli v. Circuit City Stores, Inc., where Judge Robinson of the Southern District of New York noted that courts in this circuit "have

upheld arbitration agreements where the employee signed the agreement, but did not receive a copy of the governing procedural rules." 333 F. Supp. 2d 151, 157 (S.D.N.Y. 2004 (citing Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003)). In fact, Judge Robinson faulted the plaintiff for failing to request a copy of the rules and then seeking "to benefit by her own inaction." Id. at 158.

Citing Tarulli, at least one other court has also rejected the argument Hojnowski advances here. See McGilley v. Sterling Jewelers, Inc., No. CIV.A. 12-5217 JBS, 2013 WL 1163983, at *4 (D.N.J. Mar. 18, 2013). The court found:

> Plaintiff has cited no case law for the proposition that an arbitration agreement is only valid when the signatory is provided with a copy of the agreement and the arbitration program rules. Nor has Plaintiff asserted that he requested a copy of the Agreement or the rules and that Sterling denied his request. This argument lacks merit.

Id.

To be sure, Tarulli (though not McGilley) is itself somewhat distinguishable because the agreement there specifically instructed to the employee to request a copy of the rules if one was not provided. 333 F. Supp. 2d at 158. The agreement here does not explicitly reference any rules.

For their part, the Bills do no better in identifying applicable controlling authority. Defendant principally relies on Gold v. Deutsche Aktiengesellschaft, where the Second Circuit refused to invalidate an arbitration agreement on the proffered ground that a copy of the arbitration tribunal's rules were not provided to the plaintiff. 365 F.3d 144 (2d Cir. 2004). But there, the tribunal's rules were explicitly incorporated by reference into the agreement. Id. at 149. Not so here.

In the end, however, even if this Court were to accept the unsupported proposition that the arbitration rules are "essential terms," this Court finds that because Hojnowski was

fully aware any dispute would be arbitrated before the NFL Commissioner, and because that tribunal clearly had an established set of rules governing arbitration procedure, those rules (which Hojnowski does not argue were inaccessible) were sufficiently incorporated into the agreement and knowledge thereof can be imputed to Hojnowski. Cf. Gold, 365 F.3d at 149 ("[I]t was ultimately [the plaintiff's] responsibility to ensure he understood the document that he signed.").

This is not to say that this practice is advisable; indeed, it strikes this Court as prudent to explicitly refer to, or even include in the contract itself the specific rules that would govern any arbitration proceeding. See id. at 144 ("It would have made sense for [the defendant] to have explained the form and to have provided [the plaintiff] the [] rules that were incorporated by reference. . . ."). But it is enough to conclude for the purposes of the motion before this Court that a valid enforceable contract exists and that it clearly and unmistakably compels Hojnowski to raise all employment-related disputes in arbitration.

**C. Whether the agreement was unconscionable**

Hojnowski argues that even if his employment contract was otherwise valid, the arbitration clause should not be enforced because it was unconscionable.

"[R]evocation of an arbitration agreement may [] be sought 'under such grounds as exist at law or in equity, including fraud, duress, and unconscionability.'" Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 302 (4th Cir. 2002) (quoting Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 305 (4th Cir. 2001)); 9 U.S.C. § 2. Under New York law, "[a]n unconscionable contract has been defined as one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible [sic] according to its literal terms." Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10, 534 N.E.2d 824 (1988) (internal citations omitted).

Though somewhat circular, the principle articulated by the Gillman court is clear enough. Further, the contract must generally be "both procedurally and substantively unconscionable when made – i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Id. (internal citations omitted). "[P]rocedural and substantive unconscionability operate on a sliding scale; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." David v. No. 1 Mktg. Serv., Inc., No. 2012-05819, 2014 WL 304054, at *2 (2d Dep't. Jan. 29, 2014) (quoting Simar Holding Corp. v. GSC, 87 A.D.3d 688, 690, 928 N.Y.S.2d 592 (2d Dep't 2011)).

Hojnowski argues that his arbitration agreement was unconscionable because he was not provided the arbitration guidelines and he was in an unfair bargaining position. Neither of these contentions meet the rigorous standard necessary to show procedural unconscionability. See, e.g., Hume v. United States, 132 U.S. 406, 10 S. Ct. 134, 136, 33 L. Ed. 393 (1889) (unconscionable agreement is one where "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other").

First, like his argument that the governing rules are essential terms, courts have rejected the argument that an arbitration agreement is unconscionable because the employee was not provided those rules. See Tarulli, 333 F. Supp. 2d at 158; Ciago, 295 at 329. Hojnowski provides no countervailing authority. Although the Bills likely should have provided Hojnowski with the rules, this Court, like others before it, cannot find that this omission renders the agreement "grossly unreasonable."

Second, is it not even clear that Hojnowski was in an unfair or unequal bargaining position. He admits that after receiving his contract, he met "with management . . . to

discuss salary issues." (Pl.'s Br. at 11.) Nor is there any contention that Hojnowski was not given time to consider the terms of the contract; that the Bills engaged in deceptive or high-pressure tactics; or that important terms were buried in fine print.

What is more, "[a]s the Supreme Court emphasized . . . , '[m]ere inequality in bargaining power' between employers and employees is not alone sufficient to hold arbitration agreements unenforceable." Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 207 (2d Cir. 1999) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)).

Accordingly, this Court finds that the circumstances surrounding the execution of the arbitration agreement were not procedurally unconscionable.

Hojnowski also argues that the agreement is substantively unconscionable. Principally, he contends that the NFL Commissioner, or his appointee, cannot be an impartial arbitrator because he is an officer of the NFL who is elected by its 32 member teams – including the Bills. But, initially, the Second Circuit has stated that "it is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award." Aviall, Inc. v. Ryder Sys., Inc., 110 F.3d 892, 895 (2d Cir. 1997) (quoting Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414 n. 4 (2d Cir.1980)). Although the Availl court noted that this statement was "dicta," the court went on to hold that the FAA permits removal of an arbitrator only where an agreement to arbitrate would be invalid because the "arbitrator's relationship to one party was undisclosed, or unanticipated and unintended, thereby invalidating the contract." Id. at 896. This is not the case here; the agreement is clear in appointing the Commissioner as arbitrator.

Hojnowski has identified other issues that he believes render the contract

substantively unconscionable, including limits on discovery and the location of the hearing.[1] But, as noted above, generally both procedural *and* substantive unconscionability must be present to render a contract unenforceable in New York. And this Court has already found a lack of procedural unconscionability. That is most likely sufficient. See Tarulli, 333 F. Supp. 2d at 158 ("Having found the procedural element of an unconscionability claim not satisfied, this Court need not address the Plaintiff's substantive unconscionability arguments."). But to the extent that only one type of unconscionability can sufficiently tip the "sliding scale," none of these issues (the impartiality of the Commissioner included), are so potentially unfair as to tip it back in Hojnowski's favor.

### IV. CONCLUSION

Hojnowski knowingly entered into a contract requiring him to submit his employment-related disputes to arbitration. Although the procedures governing the NFL's arbitration process should have been made more transparent, their absence does not invalidate the agreement. Further, the agreement was not unconscionable. Accordingly, Hojnowski is required to proceed to arbitration as mandated by his contract.

---

[1] Hojnowski does not argue that the NFL's arbitration procedures do not allow him to "effectively vindicate" his statutory rights. See, e.g., Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2310, 186 L. Ed. 2d 417 (2013) (dismissing concerns that the arbitral forum was inadequate, and referencing other cases finding similarly). Therefore, this Court does not address that issue.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Compel Arbitration and Dismiss the Complaint (Docket No. 6) is GRANTED.

FURTHER, that, under 9 U.S.C. § 4, this Court directs the parties to proceed to arbitration in accordance with the terms of the agreement.

FURTHER, the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: February 3, 2014
       Buffalo, New York

                                      /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                              Chief Judge
                                    United States District Court